BRADLEY & HUBBARD MANUF'G CO. *v.* CHARLES PARKER CO.

(*Circuit Court, D. Connecticut.* July 20, 1888.)

1. PATENTS FOR INVENTIONS—PATENTABILITY—CHANDELIERS.

The invention covered by letters patent No. 205,068, of June 18, 1878, issued to John A. Evarts, for an improvement in extension chandeliers, consisting of a vertical rod with certain engaging devices in an inner tube, and an outer tube with notches or perforations therein, in which the device connected with the vertical rod works in adjusting the chandelier, is a patentable novelty, and anticipated what is substantially the same device claimed to have been invented by one Charles H. Carter, and covered by a patent issued June 13, 1876, to said Carter and J. E. Browne.

2. SAME—INFRINGEMENT.

The Evarts patent is infringed by a device constructed under letters patent No. 301,861, dated July 15, 1884, issued to F. A. Chapman and R. A. Wooding, each having a vertical rod working in an inner tube together with an outer tube, the Evarts device having a bolt, which locks the two tubes in adjusting the chandelier, while the Chapman has a cam or lever pivoted at the upper end of the inner tube, which automatically acts to clamp the tubes, and hold them in the desired position.

In Equity. On bill for an injunction for the infringement of a patent.

*Charles E. Mitchell,* for plaintiff.

*Charles R. Ingersoll,* for defendant.

SHIPMAN, J. This is a bill in equity based upon the alleged infringement of letters patent No. 205,068, dated June 18, 1878, to John A. Evarts, assignor to the plaintiff, for an improvement in extension chandeliers. The application for the patent was filed November 6, 1876. The invention related to an improvement in extension chandeliers, with special reference to the fixture for which letters patent No. 142,107, dated August 26, 1873, were granted to Liverus Hull. In this fixture the inner and stationary rod was fixed to the ceiling, and the outer tube, to which the lamp was suspended, slid thereon. Fixed to the upper part of the tube was a tubular head, between whose prongs a lever-brake was pivoted. The rod extended through this brake. A helical spring fixed to the brake drew it down so as to cause it to 'gripe upon the rod. Applied to the brake was a stiff rod which extended down to the lower part 'of the chandelier. By pressing the rod upward the force of the lever-brake spring was overcome, and the brake was moved, so as to relieve the stationary rod from its gripe in order to permit the tube to be slid upward or downward upon it. This outside rod was not ornamental, was a somewhat awkward and inconvenient method of adjusting the elevation of the chandelier, and the object of the Evarts invention, as expressed in his patent, was to introduce the rod and the mechanism for adjusting the elevation within the central tube. The invention consisted, the specification said:

"In constructing the outer tube with perforations or notches, combined with a transverse bolt or pawl in the inner or sliding tube, with a bell-crank lever and central rod to actuate the said bolt; also, in a vertical rod movable within the central shaft, and in connection with the device which engages or

disengages the adjustable part, to allow the adjustment of the elevation of the chandelier, all as more fully hereinafter described."

The claims are as follows:

"(1) The combination of the outer tube, A, constructed with one or more notches or perforations, *f;* the inner tube, B, with the bolt or pawl, *a,* arranged therein; the lever, *b,* and the central rod, *d,*—all substantially as set forth.   (2) In an extension chandelier, a vertical rod movable within the central shaft, and in connection with the device, which engages or disengages the adjustable part to allow the adjustment of the elevation of the chandelier, substantially as described."

At the date of the Evarts invention extension fixtures were old in which the sliding tube could be and was fastened to the stationary rod at different points, by some sort of frictional device, usually within the telescopic stem, but not by means of a central rod, in addition to the sliding and stationary tubes.   Evarts first took the vertical rod, which, in the Hull patent, and the patent to Hiram Tucker of August 17, 1869, was exterior to and upon one side of the chandelier, and placed it inside the central shaft, and connected it with devices which regulated the elevation of the chandelier.   His first claim was for the vertical rod, and the particular described method of construction of the outer and inner tubes and of the engaging devices.   The second claim was for the vertical central rod, in combination with the devices, substantially as described, which engaged or disengaged the adjustable part, or with other known equivalent or known substitute devices therefor.   The first claim required the outer tube to be constructed with notches or perforations, and required the bolt or pawl which was attached to the inner tube.   The second claim required the vertical rod, and included known substitutes, or known equivalents, which accomplished the same result and which was effected by the described notches or perforations and lever and pawl.   The improvement in extension chandeliers which was patented by letters patent dated June 13, 1876, issued to Charles H. Carter and James E. Browne, consisted of the Evarts vertical central rod, which operated upon lever-like cams, pivoted by their inner ends to its upper end.   The lifting of the vertical rod released the cams from bearing against the tube of the chandelier, and allowed the sliding tube to be lowered at will.   This device was precisely upon the principle of the Evarts improvement, and, had it been invented earlier, would have deprived the Evarts patent of any just claim to novelty; but the testimony in this case showed that the result which was reached upon the interference in the patent-office, between Evarts on the one hand, and Carter and Browne on the other, was correct, and that Evarts' invention, which was reduced to practice in April, 1875, anticipated what they styled their "joint invention" in November, 1875.

The defendant vigorously attacks the truth of Evarts' testimony in regard to his hanging in his parlor, in April, 1875, a lamp like that described in his patent, upon the ground that the story is inconsistent with natural probabilities, and with the ordinary conduct of men, and, unless better supported by additional testimony, should not be believed; but I do not perceive adequate reason to doubt its truth, while, on the

contrary, it seems a natural and reasonable story. The defendant next insists that the invention of Charles H. Carter, one of the joint patentees of the Carter and Brown fixture, anticipated the Evarts invention. Carter's alleged sole invention was conceived of in February, 1874, and his first model was finished in July or August, 1874. That model was taken to pieces, and some of its parts were put into a new model, and the other parts were thrown away. In this manner other models were successively made, not all like each other, until one remained in existence, which was shown to James E. Browne in October, 1875, who made certain suggestions, which resulted in a model which was made in November, 1875, and was considered their joint invention or improvement, and for which they jointly applied for a patent on April 28, 1876. Carter's invention, as described in his subsequent sole application for a patent, and as illustrated in his first model, consisted of an outer stationary tube, an inner sliding tube, and a central vertical rod, to the upper end of which was was hinged a wedge. The inner surface of the wedge moved upon the upper beveled surface of the inner tube, so that, as the wedge was moved upward by the rod, it and the inner tube moved freely in the outer tube, but upon the removal of force from the rod, a spring which surrounded its lower end pressed the rod downward, which pressed the wedge outward, and it was brought in contact with the outer tube, and held the two tubes in place. The model which Carter showed Browne had an outside tube, an inside tube, with two cams pivoted on its upper end, and a central rod having a quarter-turn thread at its upper end. The cams were operated upon and were released by the turning of the central rod, instead of by pressure upon it. Browne suggested that the cams should be pivoted upon the central rod, which was done, and the movement of the rod was thereafter vertical. Neither model of Carter's was ever a working model, or an actual chandelier. In December, 1875, a full-sized chandelier of the Carter and Browne pattern was made. The examiner of interferences decided the Carter and Browne interference in favor of Evarts, on July 7, 1877, and on July 27, 1877, Carter alone applied for a patent. It thus appears that, although Carter got an idea of an invention in February, 1874, he never reduced it to practice, but it was indicated only in crude models; the locking devices being of different methods of construction until after he and Browne came together. Upon his own testimony, he completed or perfected nothing. He conceived the idea of a centrally-inclosed movable rod for operating a checking device, and made a model in which the rod was attached to a wedge, and, when pressed or pushed, operated upon it, and brought it in contact with the outer tube. He destroyed that model, and made others, in the last of which two cams were attached to the inner tube, and were released by the turning of the rod. The inchoate invention remained in this condition until Browne became interested in it; and, at his suggestion, the original idea seems to have been taken up again, and two cams were used, which were attached to the central rod, and were operated by its upward movement. Up to this time different methods of carrying out the idea had been thought of, but the invention was undeveloped

and uncompleted. He was not necessarily prevented from completing it. In 1874 he was an inventive youth of 16 years of age; and from that time until 1877, he was engaged, with his father, in the manufacture of telegraph instruments, and of electric burglar alarms, and in electrical business. In and after 1874 he invented a burglar electrical alarm, for which letters patent were granted April 23, 1878, upon an application filed April 20, 1877. During this time the father and son were pecuniarily embarrassed, but it does not appear that poverty prevented him from perfecting the chandelier invention. He did not perfect it because his mind was more earnestly interested and actively employed in other mechanical subjects, and the chandelier was a thing one side of his regular business. Meantime Evarts had completed and reduced to practice his invention. In *Hubel* v. *Dick*, 28 Fed. Rep. 132, I had occasion to quote the more important decisions in this country upon the necessity of the first inventor's reasonable diligence in reducing his mental conceptions to practice, and embodying them in some useful form. From those decisions it appears that there is no adequate reason for the contention that Evarts was not, in law, the first inventor, while the history of the art clearly shows that the second claim, as construed, was a patentable invention.

The extension chandeliers of the defendant are made under letters patent No. 301,861, dated July 15, 1884, to Frank A. Chapman and Ralph A. Wooding, assignors to the defendant. The device consists of an outer tube fixed to the ceiling, an inner sliding tube which carries the lamps, and is provided near its upper end with an opening, and a shoe which fits the opening, but has free motion. A cam or lever is pivoted at the upper end of the inner tube. One arm of the cam operates upon the inner face of the shoe. To the opposite end of the cam is attached the central rod. By pulling upon the rod, the cam is turned, so as to relieve the shoe, and the inner tube can be moved up or down. When the rod is released, the cam automatically acts to clamp the tubes. The device described in the Evarts patent is a bolt which positively locks the two tubes together. In the defendant's device the action of the cam upon the shoe, which loosely rests in the opening of the inner tube, clamps the two tubes together. The cam could be used without the shoe, which is for the purpose of protecting the outer tube from being scratched, and of affording a larger and more secure clamping surface. This cam has the clamping effect of the cams of the Carter and Browne patent, instead of the more positive locking effect of the Evarts bolt; but the patentees borrowed the main idea of the Evarts patent, which was the introduction within the central shaft of the vertical rod, and the mechanism connected therewith for adjusting the elevation of the chandelier; and the cam mechanism of the one was a well known equivalent for the locking mechanism of the other. Let there be a decree for an injunction against the use of the second claim, and for an accounting.